The United States. I think your honor, and to me, please support. I represent 70 Florida landowners whose claims for compensation were dismissed in a Trails Act taking case because the Court of Federal Claims wrongly construed a series of deeds in Florida that were executed in the 1910-1941 period of time as conveying an actual fee of state to the railroad as opposed to an easement. These deeds were all for narrow strips of land. Specifically referenced the fact that the railroad was already in possession of the property or had already surveyed and located its corridor across the property. And under Florida law, those are conveyances that grant only an easement. Can I ask a factual question so I can try to pinpoint some of the arguments? You argue that in some of these cases that there was a survey done. That's why you lie on salt and you've got the issue of the case that came in this morning. But you argue that as to some of the deeds, not only was there a survey done, but the track was already laid through the property. So which deeds were executed before the track being laid and which were executed after the track was laid? Or were there some that were executed in the middle? I'd be glad to clarify that. And it's a very easy way to break out the record. There's the southern segment, the segment that's also referred to as the BLED, the segment of the corridors two miles long south of Curry Creek. That's the segment where the rail line was relocated in 1927. That's where the railroad was not only built, but they were actually running trains across it before the deed from BLE, the original deed that was subsequently foreclosed, was granted. The other four deeds, the Knight, Blackburn, Frazier, and I'm failing to recall the fourth, those deeds were all executed before the railroad was actually constructed, but after it had been surveyed. And so those were considered by the Court of Federal Claims in two separate decisions. So her decision considering the relocated BLED, the train was already running across that property. Do you believe that that factual distinction is pertinent in light of this morning's decision from the Vermont Supreme Court? Or the one we received this morning? Right. I have quite a few comments about the Vermont Supreme Court decision. First off, I don't think that certainly doesn't change anything. Florida sees this issue very differently than at least Vermont has now announced that they now see it. Florida looks at this under their published decisions, under their statute, the same way this Court en banc considered it in per se. And I think the panel needs to look to the en banc decision of this Court for that concept. What's your best Florida authority for that proposition? There would be on page 11 of a reply brief, we cite a series of Florida Supreme Court cases going back to State v. Baker, where when you read these together, these cases, and I could read them all into the record if you wish, but it's the bottom of page 11 of our reply brief. That's not necessary. Those cases stand for the proposition that when a railroad is acting under this authority, under these statutes, to enter somebody's property, to establish, survey, and build a railroad across it, the conveyance they obtain, the voluntary conveyance as a matter of express Florida statute, conveys only a right-of-way easement. When you read those cases, that's what they talk about. The railroad is acting, particularly Baker v. State, which is a case where the landowner actually sought to enjoin a railroad from coming onto his property and condemning the right-of-way. The Court there said, no, you can't do that. The railroad can go ahead and enter. They entered your property without any authority. They were, quote, trespassing. But they have the authority under this eminent domain statute. And when they do that, they get an easement for a right-of-way. But do those cases actually say that if, in fact, a deed is also executed, that the deed can't result in a different type of transfer? Those cases, for example, the Davis case is one we also cite, which says when a condemning authority as well as, I think, the Levitt case would also, and we cite that in our brief, the cases. These are not, neither of those are on page 11. Those are not on page 11. Oh, no, there is all Florida Railroad v. Levitt, or is that a different case? I think Levitt, yes, Levitt would be one of those cases. There's also the Davis case that we cite, and I think it's Davis v. M.O.D. earlier in our briefs. They say, Florida law says, when you have an authority acting as a railroad is in that circumstance. They've entered the property. They've surveyed and they've, in that case, constructed and running trains across it. The only interest they obtain as a condemning authority is by Florida statute. Right, as a condemning authority, and this is the part that I'm trying to understand. Clearly, by statute, they can be a condemning authority. They can act as a condemning authority. You can't kick them out, but the only interest they get at that point is a right-of-way. The question is not, you know, this railroad obviously decided it was going to use the belt and suspenders, so it had the right to go, but it also then wanted to execute a deed for some consideration. So why couldn't they, in addition to their right as a condemning authority, obtain fee simple? And that's what we're trying to determine. And that would arise directly from the language of the Florida statute 4354, which says, it says when the railroad's doing that, the voluntary conveyance, the deed they received was the voluntary conveyance, and that voluntary conveyance is by statute limited to that interest that they needed to acquire to obtain their authority, the purpose for which they exercised that eminent domain. I didn't understand the statute. We've cited it several times. It's section 4354, page 24 of our opening brief, and it's quoted in relevant part. It's part of the Florida General Railroad Authorization Act of 1874, and it's been codified in years since, but it's been consistent law throughout. Okay, what about section 3 of that same statute, though? Section 3 is, they don't have the entire statute in front of me. To purchase, hold, and use all such real estate and other properties as may be necessary. Correct. And the relevant portion, certainly the railroad can obtain these interests in land and real estate and use them as such, and then it goes on and says this qualifying provision that is in the brief in italics, but the real estate received by voluntary grant, which would be what these conveyances are, shall be held... These conveyances, you say they're a voluntary grant. They're a voluntary grant for consideration of a fee symbol. Well... Say I disagree with you on your interpretation as a hypothetical of what the contracts actually are, and say I can, because right now we're talking about whether or not, even if you conveyed a fee symbol, would it not really be a fee symbol under Florida law? So assume that the contracts were a fee symbol conveyance. Okay, even if they purport to be a fee symbol conveyance, if it's for this type of use, which is a strip of land that is something that arose in the context of a railroad acting under this condemnation... But if I granted you a fee symbol, a fee symbol, I granted you a fee symbol, this code section that you pointed to says the railroad's rights are limited to the purpose of the grant. The purpose of my grant was to give you a fee symbol, title to my land. So I don't see how this section supports the idea that it's limited to how the railroad intends to use the land, because that wasn't what I gave you. I gave you a fee symbol, assuming that's the way it was interpreted. Well, I think the hypothetical, you would have to take the railroad out of the context of the way it acted here and even the text of these deeds, because it says in the text of these deeds, this is across a strip of land where we've already located a rail line. So the railroad is, by definition, in the text of the deed, acting within the context of this statute and its authority in the statute. So it applies. I'm not saying that would apply if, say, for example, the railroad wanted to come and buy a track of land for an office building or a depot or something, separate and apart from their authority. Well, there are some depot cases as well. Florida has some depot cases. That is correct. In fact, some depots, Miami Grand Central Station was actually built on an easement. But if I accept your argument with regard to how to interpret this statute, then it would apply even in a situation where they didn't locate and put down track and start running. Your interpretation of this statute, taking it to its logical conclusion, would include the railroad coming to you and saying, I'd like to buy your land, and you're saying, no way, I'm not selling it to you. The railroad says, I'll give you $5 million for it. Far more consideration. I understand all the facts of your contract. But, you know, $5 million for this land, I want to run my railroad through it, and you acquiesce in giving them the fee simple, unequivocally in that contract. And what you're saying is they didn't get a fee simple, despite how much the railroad may have paid, that this statute prevents, it seems to me, a railroad from holding a fee simple. When they're exercising, acting within what they could condemn. So when they're in a negotiation, what Florida law, like many other states, has, is when a condemning authority is talking to a landowner and saying, I'm going to take your property, but instead of going through condemnation, instead of having to have that hearing, you know what, just give me a deed, and I'll give you some money, and we don't have to go through that. So when they have the ability to take it, you're saying it can never be a fee simple. That's exactly. Even if everybody agrees, and the contract is crystal clear, and the compensation is way up high. If the easement is one that, if their purpose is achieved with an interest less than a fee simple, then in that case, they can't require more. How is that consistent with the other statutes that Judge O'Malley pointed out, though, that says railroads can hold? Well, I think they can. The question is, is it necessary to have a fee simple to achieve their purpose? It's not necessary for a railroad, under the cases we've cited in Florida, to have anything more than an easement across the property to achieve their purpose for this. Now, I would allow, certainly, if they want to build an office building, if they have a purpose that's different than that, then they can certainly acquire fee simple. If they want to act for some purpose outside their condemnation authority, then they can certainly do that in a negotiation. But when they are there, they've already entered the land, they're acting under the power of the state, as the court and… Well, already there, already entered the land, is a different scenario than what this statute covers. You want me to cut to… For me to interpret the statute the way you suggest, it would apply whether they were already there and had already taken the land or not. As I read the statute, no, it wouldn't. It would be when the railroad is… This statute, when you read particularly the text, not just the excerpted text, it talks about the authority of a railroad to enter property. And it can be read also with the companion statute, which is Chapter 169, that grants the railroad that specific power of eminent domain in Florence. Well, the government didn't raise this argument. Obviously the Vermont Supreme Court raises the question of whether someone who executes a deed can then rely on a statute to argue that despite the face of the deed, the act was ultra-virus and that the railroad had no authority to do that. They say that individual parties wouldn't have standing. Yes, well, there's two problems with that. First off, I think, as I mentioned, Florida would not follow the law the way that certainly Vermont just recently announced it. It would apply the law as this court in Bonn did in Purcell. Secondly, their ultra-virus argument is sort of backwards because are we to presume that a railroad, to even get to that point, you have to first assume that the railroad entering these transactions intended to enter into a transaction, because that's what we're trying to do, interpret what these documents mean, the intent of the grantors. You have to then say the railroad intended to engage in this transaction in 1910 to achieve an ultra-virus act, something it couldn't legally do before you even get to the assumption. So the Vermont Supreme Court begs that question. And certainly you're correct, it wasn't an argument the government brought up. The statute is relevant not because you can bring an action under the statute, but because it is indicative of what the parties intended and understood. Correct. The statute says that. That's exactly correct, Your Honor. And I want to reserve some time for rebuttal. Let's do that. Okay. Mr. McFadden. I brutalized an easy name. Can you imagine how much trouble I have with the hard one? Thank you, Your Honor. I am Lee McFadden. I represent the United States. Good afternoon and may it please the Court. Mr. McFadden, here's what bothers me about this case overall, and that is the context starting in, say, 1875 and moving forward through 1927 where you have a development of the law starting, I analogized it in Chambers, to high tech. Here the United States is saying, wow, we want to develop this whole new transportation system and so on. Let's legislatively do what we have to, and we have a war going on as well. And that trickles down to the states in the form of state statutes, and they're granting all these powers, especially governmental eminent domain powers. Then they sort of look at the results because you have the Grange movement and you have the whole, the railroads are running everything and engaging in predatory conduct movement of, say, the progressive era. And what happens is the legislatures, state legislatures, start looking at this and saying, these are contracts of adhesion. And you're seeing, obviously it varies from state to state, but you're seeing these legislatures say, okay, we're going to set this up so that even though it says, for example, there's a transfer in some form, it's not. And that's clearly happening in states, there's interpretations that way. And it looks like it's because one party has powers given it by the government that they're using in a way that the legislatures don't like. So why aren't we informed by that history? Well, I think you can be informed by that history in that, well, yes. I mean, I think that general description of the process is correct, Your Honor, but Florida, of course, is aware of this concern as any other, and this third subsection of its statute, which allows corporations to buy and sell property outright, railroad corporations, that is, specifically, hasn't changed until 1986. And so many decades after any of the deeds at issue were involved, there was the law in Florida from 1874 through all the time periods that are relevant here, they could do that. And in 1934, you had the Florida Supreme Court's decision in Atlantic Coast Line Railway where they said, you know, a railroad right-of-way in the state is not a mere easement for railroad purposes, like other property is acquired by purchase or condemnation. And so I think the Florida legislature did what many of the other states, which I'm aware of, did, which is they said the exercise of eminent domain power is a very specific thing about which we should have concern, and if that power is exercised, it is limited. It can only acquire an easement. And so, too, if someone grants property… Are you going to distinguish between the southern two miles where the line is running and in place and the rest where it's surveyed? I don't think I need to distinguish that. I think that even the preexistence of the railroad on that property did not legally foreclose the railroad from then going back and buying the property outright, which is what they did. And what did they pay? They did not give much consideration stated in the deed. I believe in that deed it's… A hundred or two hundred? It's actually less. In that southern railroad, it was $5 plus other valuable consideration in hand, and they all say that. And it's not uncommon to see that in deeds, that the full amount of money exchanged isn't always written out in the deed. The important thing from a legal standpoint is that there is some valid consideration, which makes it… That's what we obviously do of interpreting state law. Why don't we just send this to Florida so that we don't make another mistake? Well, Your Honor, in this case… Especially state law that's like from the 1800s. I mean, could you make it any harder on us? I mean, the state laws that we're discussing here, obviously we had to draw from Supreme Court decisions, but none of this is really necessary because in Florida, the law that no one disputes is that you stay within the four corners of the deed so long as there is unambiguous language within those deeds that expresses what interest is conveyed. But all of these deeds come, as Judge Wallach has said, in a context where there's an overlay of a government compulsion and of the need for the railroads and the fact that everybody executing these deeds knew that they had no choice because these railroads were going to go through their land. And now the question is whether or not everybody's willingness to step up to the plate for the railroads should include a willingness to have everybody and their brother riding their bike or whatever through their backyard. So, I mean, shouldn't we just find out what Florida really desires here? Well, Your Honor, we have 140 years of Florida Supreme Court cases, and I'm happy to walk through those cases cited on page 11 of the reply brief. There is no Florida case which states unequivocally that a railroad cannot receive a conveyed feasible interest in title and property because it does have these other problems. But there's no Florida case that says after a railroad is already established on your property and then you sign a fee simple, it's really a fee simple. There's no case that says that either. And given that there is at least a suggestion, like even in the Vermont case we just got, there's a suggestion that they didn't actually establish anything on the land. All they had done is surveyed and maybe effects were different. The Vermont Supreme Court may have reached a different conclusion. So, I mean, I feel pretty confident that I don't have the ability to predict individual state law on this antiquated point. Well, I accept that, and I realize the appellants have asked you to certify the Florida Supreme Court, although they didn't identify what specific question to be certified. I still think that that concern is unnecessary because all of these, these are all presumptions. These are policy concerns. They would only apply if the section of the statute that expressly permits the purchase and sale of property by railroad corporations was to help not to apply. And there's no reason why that wouldn't apply. It, by its own language, says that they can purchase property even if it's unnecessary for railroad purposes. And there's no limitation on their power. There has already been, there were cases before this that were, if the court of claims it appears they weren't appealed, but there were Florida cases before this. And then, in that, Judge Hewitt said, wish I could certify. This judge says, wish I could certify. So, we've got two different court of claims judges having had these issues presented to them. Presumably, there's lots of railroad, abandoned railroad track in Florida, and almost, I would assume, Florida's probably the key place where you want rails to trails. So, I mean, it is going to repeat itself, right? These issues, I mean, I suppose if the court goes outside the deed and says, and we can only resolve this by determining whether there is some rule in Florida which we've not found in the cases, then that, I think, it would make sense to certify to the Florida Supreme Court. So, if we certify to the court, what's the government's position on what we should certify? Well, Your Honor, I think the certification should be very narrow. For example, suppose that we were able to conclude that we do believe the deed conveys a fee simple, so we put that question to rest. Do we certify that, you know, making Florida accept our determination about what the deed does legally convey? So, tell Florida, assuming a deed conveyed a fee simple to some property, some of which had already been surveyed, others of which, prior to the deed, had actually laid track and begun running a railroad, does the fact that those activities occurred prior to the deed conveying a fee simple transfer the fee simple now into purely and only an easement, or is it possible the railroad still owns a fee simple? Something like that. If that were the way it would be framed, would that be something you think would be proper? We would not oppose that, Your Honor, framed in that manner. We maintain, of course, that if you found a deed... But we're not going to ask Florida to interpret the contract. That's not... And we maintain that Florida law is clear on the easiest point, which is that if you interpret the contract by itself, and it says on its face that it was a transfer of fee simple title, then the matter is concluded. I think that the real question, as you can tell from all the questions we've gotten, is does Florida law override what might otherwise be a clear contract with some prior precedent or statute that sort of prevented a railroad from acquiring a fee simple after it already took the land? And that question... And they have resources. We don't. I mean, we have the computers. We talked to the circuit library. We talked to the Library of Congress trying to get materials. But obviously they have assets, books they can open up. They have old books, for sure. And they are ultimately the last word in what Florida's state law is. And so you certainly could certify that specific question on that specific set of assumptions. I think... I mean, I maintain that you don't have to because you don't have that indication from their cases that this is a rule that exists. And the rule is contrary to the general rule of property. We don't have a contrary indication from their cases either. No, but you have the common law of property, which says that the transfer of fee simple is what it says that it is, and that has centuries of history behind it. The contrary presumption that's advanced by appellants is one that requires... I mean, that's where the burden of persuasion lies, right? It is contrary to how a property operates and how deeds are transferred. These are very... They say, in fee simple forever, all of my titles... Subject to the statute that don't extend the role against perpetuity. Right, right. Just out of curiosity, why wouldn't every state come out against you? Money for their citizens out of your coffer. Like, why wouldn't every state on a blank slate say... Would it totally unravel property law if they were to do that? If they were to come out against us in favor of the law here about railroads never being able to take title, it would be very, very expensive for the federal government. Yes. I'm happy to address any other issues Your Honor has questions about. Thank you. Let's give Mr. Hearn his rebuttal time. I just want to say I personally use these trails all the time, but that's a separate issue. Yeah, they're much easier walking than Appalachian Trail. Mr. Hearn? Thank you, Your Honor. I would address two points. First, Judge Wolk, exactly what you described was how the Supreme Court itself went through the process in the recent Brandt case to analyze the context of, in that case, federal grants of rights of way. That's exactly how I think this court should look at it, or how, if it's certified to the Florida Supreme Court, the Florida Supreme Court should look at it. And I do think it should be certified. But I want to address the question of fee simple. But do you really think the Brandt case says a lot about this proceeding? I think the Brandt case says several things. I think, one, it gives us some insight into interpretation of grants of railroad rights of way, and I look at Chief Justice Roberts when he talks about use of the prepositions or adverbs of over or across as indicating an easement was intended. I think that's helpful. I think the way the court looked at the historical context is directly helpful there, because the same thing was going on in the states, exactly what you mentioned. The railroads are becoming very powerful. They negotiate with a landowner with a gun to their head. You either give me this deed or I take your property. So the states responded, exactly as you indicated, to say, okay, we're going to make it so the presumption is the railroad can get what it wants, but only what it wants. In the case of the Indian reservations, you're literally correct. Yes, absolutely. Mr. Hiram, we have to wrap it up. So, yes, that's the final point I would add, is just that fee simple, the words fee simple, as you pointed out in your brief, are frequently used, particularly in Florida. We have your arguments. Thank both counsel. The case is taken under submission. All rise.